UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
WING F. CHAU and HARDING ADVISORY LLC,

                          Plaintiffs,

               -against-                                      14-cv-1903 (LAK)

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

                          Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

        Appearances:

                  Alex Lipman
                  Sean T. Haran
                  David A. Feldman
                  Ashley Baynham
                  NIXON PEABODY LLP
                  *Attorneys for Plaintiffs*

                  Richard M. Humes
                  Melinda Hardy
                  Laura Walker
                  Smith Greig
                  Sarah Hancur
                  SECURITIES AND EXCHANGE COMMISSION
                  *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

        "The United States' housing market collapse in 2008-2009 and the ensuing global

financial crisis are widely considered the worst financial disasters since the Great Depression; their

causes have been hotly debated."[1]  They have spawned proliferating literature and litigation.  Justly or otherwise, they have cast a strong spotlight on some of those involved, including the principal plaintiff in this case, Wing F. Chau.  Mr. Chau, through his firm, plaintiff Harding Advisory LLC ("Harding"),[2] was a prominent manager of collateralized debt obligations ("CDOs") – a "type of structured asset-backed security that evolved to encompass the mortgage and mortgage-backed securities market."[3]  Collateral managers typically are responsible for the selection, acquisition, and monitoring of the portfolios of the CDOs.

In October 2013, the Securities and Exchange Commission (the "SEC" or "Commission") commenced an administrative and cease-and-desist proceeding against Chau and Harding pursuant to various provisions of the Securities Act of 1933 (the "Securities Act") and the Investment Advisors Act of 1940 (the "Advisors Act").[4]  The order instituting that proceeding charges, among other things, that Chau and Harding made material misrepresentations in connection with the sale of securities representing interests in a CDO called Octans I CDO Ltd. ("Octans I").[5]  They are said to have represented that the assets of the CDO would be selected by Harding.  In fact, however, that representation allegedly was false and misleading because Chau and Harding failed

---

[1]  *Chau v. Lewis*, 771 F.3d 118, 121 (2d Cir. 2014).

[2]  Harding is a registered investment adviser, and Chau is Harding's president and managing member.  Compl. [DI 2] ¶¶ 10-11.

[3]  *Chau*, 771 F.3d at 122 n.2.

[4]  *See* 15 U.S.C. § 77h-1 (Securities Act); 15 U.S.C. § 80-b3(e), (f), (k) (Advisors Act).

[5]  Decl. of Alex Lipman [DI 24] Ex. 1 (Order Instituting Administrative and Cease-and-Desist Proceedings (Oct. 18, 2013)); DI 2 ¶ 24.

to disclose that a hedge fund, the interests of which were not aligned with those of Octans I and its investors, had substantial rights and influence over the selection process.[6]

After some initial skirmishing before the SEC administrative law judge ("ALJ"),[7] Chau and Harding brought this action to enjoin the Commission from going forward with the administrative proceeding. They contend that the SEC's choice to pursue them administratively, as opposed to suing them in a United States District Court, deprives them of their rights to due process and equal protection of law.[8] They are not alone in attacking the SEC's recent choices of administrative rather than judicial *fora*.

Plaintiffs' application for a temporary restraining order was denied.[9] The administrative case has been tried to conclusion.[10] The ALJ's decision is expected in January

---

[6]   DI 24 Ex. 1 ¶¶ 8, 25, 59; DI 2 ¶¶ 25-26.

[7]   On December 20, 2013, plaintiffs moved the ALJ for (i) a six-month adjournment, (ii) application of the Federal Rules of Civil Procedure to the administrative proceeding, and (iii) an order directing that the SEC turn over documents in a fashion more to their liking. DI 24 Ex. 7; DI 2 ¶ 51. The ALJ denied the motion on January 24, 2014. DI 24 Ex. 11. On February 14, 2014 plaintiffs filed an emergency motion before the ALJ, asserting a violation of their due process and equal protection rights. DI 24 Ex. 33. The ALJ denied the motion on February 19, 2014. DI 24 Ex. 34. On February 26, 2014, plaintiffs filed a petition for interlocutory review before the SEC. DI 24 Ex. 35. The SEC denied the petition on March 14, 2014. DI 24 Ex. 38; DI 2 ¶ 51.

[8]   DI 2 ¶ 54.

[9]   Tr. of Mar. 19, 2014 Oral Arg. [DI 6] at 17:3-19.

[10]  The administrative hearing took place between March 31 and April 30. *See* SEC's Mem. of Law in Opposition to Plaintiffs' Motion for Preliminary Injunction and Motion to Dismiss [DI 16] at 12.

4

2015.[11]  In the event the Commission prevails before the ALJ, Chau and Harding will have the right to appeal to the Commission and, if unsuccessful there, to seek review in a United States Court of Appeals.[12]

The matter now is before the Court on (1) plaintiffs' motion for a preliminary injunction which, if granted, would bar the Commission from continuing its administrative action, and (2) the SEC's motion to dismiss the complaint for lack of subject matter jurisdiction.

*Discussion*

I.    *The Standard Governing Motions to Dismiss for Lack of Subject Matter Jurisdiction*

The Court must address the threshold question of whether it has subject matter jurisdiction before considering the merits.[13]  While the Court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,"[14] jurisdiction "must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences

---

[11]

The ALJ initially was to have issued a decision by September 15.  DI 16 at 14.  That deadline has been extended until January 12, 2015.  *See Harding Advisory LLC & Wing F. Chau*, Securities Act Release No. 9632, Investment Advisors Act Release No. 3901, Investment Company Act Release No. 31219, 2014 WL 4160053, at *2 (Aug. 21, 2014).

[12]

*See, e.g.*, 15 U.S.C. § 77i(a) ("Any person aggrieved by an order of the Commission may obtain a review of such order in the court of appeals of the United States, within any circuit wherein such person resides or has his principal place of business, or in the United States Court of Appeals for the District of Columbia . . . .") (provision applicable to domestic securities); *see also* 15 U.S.C. §§ 80a-42(a) (provision applicable to investment companies), 80b-13(a) (provision applicable to investment advisors).

[13]

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007).

[14]

*Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010) (quoting *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006)).

favorable to the party asserting it."[15]  It is the burden of the party asserting federal subject matter jurisdiction – in this case, the plaintiffs – ultimately to prove by a preponderance of the evidence that such jurisdiction exists.[16]

## II.      Subject Matter Jurisdiction and Administrative Adjudication

Plaintiffs ask this Court to interrupt an ongoing agency adjudication.  The question is whether the Court has the power to do so in these circumstances.

Article III allows Congress "to delay judicial review of administrative action"[17] and "to 'choose the court in which judicial review of agency decisions may occur.'"[18]  Whether a statutory provision channeling such review to the courts of appeals divests district courts of subject matter jurisdiction to review an agency action is a matter of congressional intent and depends on whether "such intent is 'fairly discernible in the statutory scheme.'"[19]

"Generally, when Congress creates procedures 'designed to permit agency expertise

---

[15]

Id. (quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)).

[16]

See *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

[17]

33 CHARLES ALAN WRIGHT & CHARLES H. KOCH, JR., FEDERAL PRACTICE AND PROCEDURE:  JUDICIAL REVIEW § 8364 (1st ed. 2006).

[18]

*Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007) (quoting *Five Flags Pipe Line Co. v. Dep't of Transp.*, 854 F.2d 1438, 1439 (D.C. Cir. 1988)).

[19]

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994) (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351 (1984)).

to be brought to bear on particular problems,' those procedures 'are to be exclusive.'"[20]  This implies that Congress' provision of circuit court review of Commission decisions in cases such as this forecloses district court consideration of matters at issue in these administrative proceedings. Nevertheless, the Supreme Court has instructed that a statutory review scheme in limited circumstances does not bar a pre-enforcement challenge to an administrative action.

The touchstone is *Thunder Basin Coal Co. v. Reich*.[21]  That case involved a federal statute, colloquially known as the "Mine Act,"[22] that allows miners to select employee representatives who, in turn, have certain safety inspection rights.  Thunder Basin's miners selected representatives who were members of the United Mine Workers and who were not mine employees. Thunder Basin objected to the selection of non-employee representatives under the Mine Act and informed its regulator, the Mine Safety and Health Administration, that it would not comply with certain related regulatory provisions.  When federal authorities told Thunder Basin that it was obliged to comply with those regulations notwithstanding its objections, Thunder Basin sued in federal district court for pre-enforcement injunctive relief.  The district court granted the injunction but the Tenth Circuit reversed.  It held that "[p]ermitting district court jurisdiction on the basis of claims of constitutional violations or conflict with other statutes would permit preemptive strikes that could seriously hamper effective enforcement of the Act, disrupting the review scheme

---

[20]

   *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010) (quoting *Whitney Nat'l Bank in Jefferson Parish v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 420 (1965)).

[21]

   510 U.S. 200.

[22]

   *See* 30 U.S.C. § 813(f) (the "Federal Mine Safety and Health Amendments Act of 1977").

Congress intended."[23]

The Supreme Court affirmed the Tenth Circuit. It reasoned that to "uphold the District Court's jurisdiction in these circumstances would be inimical to the structure and the purposes of the Mine Act."[24] In doing so, the Court identified three factors pertinent to determining whether a statutory review scheme divests district courts of jurisdiction over pre-enforcement challenges to an administrative action: (i) whether "a finding of preclusion could foreclose all meaningful judicial review," (ii) whether the suit is "wholly collateral to a statute's review provisions," and (iii) whether the claims are "outside the agency's expertise."[25]

In *Free Enterprise Fund v. Public Company Accounting Oversight Board*,[26] the Supreme Court returned to this framework. Appellants there argued that the structure of the PCAOB, an organ of the SEC created by Sarbanes-Oxley,[27] violated principles of separation of powers. Applying *Thunder Basin*, the Court determined that a pre-enforcement constitutional challenge to the Board's existence was permissible. First, the Court concluded that the alternative would "foreclose all meaningful judicial review" because the statutory review scheme contemplates appeal of final SEC orders, not a challenge to the Board's constitutionality.[28] Second, the Court

---

[23]

*Thunder Basin Coal Co. v. Martin*, 969 F.2d 970, 975 (10th Cir. 1992).

[24]

510 U.S. at 216.

[25]

*Id.* at 212-13.

[26]

561 U.S. 477.

[27]

*See* 15 U.S.C. § 7211.

[28]

561 U.S. at 490-91.

determined that petitioners' claim was "wholly collateral" to any SEC adjudication because the only way for appellants to consummate their challenge would be to litigate a *particular* rule or order when, in actuality, their argument was that the Board's very existence was unconstitutional.[29]  Third, the Court stated that the SEC had no special expertise to consider such a challenge, which was a question "of administrative law [that] the courts are at no disadvantage in answering."[30]

The parties here agree that the *Thunder Basin* factors govern whether this Court has subject matter jurisdiction.[31]

## III.    Circuit Precedent

We begin by canvassing four previous cases in this circuit involving pre-enforcement challenges to administrative adjudications.[32]  As will appear, all have looked to *Thunder Basin* and *Free Enterprise Fund* for guidance, but have reached differing conclusions based on the factual circumstances of each case.  Because plaintiffs and the SEC urge radically different interpretations of these cases, a brief overview is appropriate.

---

[29]
   *Id*. at 490.

[30]
   *Id.* at 491.

[31]
   *Compare* Mem. of Law in Support of Plaintiffs' Motion for a Temporary Restraining Order and a Preliminary Injunction [DI 25] at 27-28, *with* DI 16 at 17-27.

[32]
   *See also Connecticut v. Spellings*, 453 F. Supp. 2d 459, 494 (D. Conn. 2006), *aff'd on other grounds sub nom. Connecticut v. Duncan*, 612 F.3d 107 (2d Cir. 2010) (applying *Thunder Basin* to conclude that the court lacked jurisdiction to hear certain constitutional challenges involving the No Child Left Behind Act); *Hayden v. New York Stock Exch., Inc.*, 4 F. Supp. 2d 335 (S.D.N.Y. 1998) (holding that the court lacked subject matter jurisdiction under *Thunder Basin* over a challenge to an NYSE disciplinary proceeding).

The first case was *Altman v. SEC*,[33] which involved the SEC's pursuit of administrative charges against an attorney on the grounds that he allegedly offered to have his client provide false testimony to the Commission.[34]   The ALJ concluded that Altman had violated his professional obligations under the New York Code of Professional Responsibility and SEC rules and banned him from appearing before the SEC for nine months.   When Altman appealed to the full Commission, the SEC increased his punishment to a lifetime ban.   Altman sued in the district court, alleging that the SEC had violated his constitutional rights to due process, equal protection, and privacy.[35]

The district court held that it lacked subject matter jurisdiction.[36]   It determined, first, that "any constitutional challenge raised in [Altman's] administrative proceedings will be meaningfully addressed in the Court of Appeals should Altman appeal the SEC's sanction against him."[37]   Second, the court reasoned that Altman's challenge was not to the existence of the SEC itself (as was the case in *Free Enterprise Fund* with respect to the existence of the PCAOB), but rather "to the constitutional ability of the SEC to sanction attorneys practicing before it."[38]   Third, the court concluded that "the SEC has the authority and expertise to hear constitutional challenges"

---

[33]   768 F. Supp. 2d 554 (S.D.N.Y. 2011).

[34]   *Id.* at 557.

[35]   *Id*. at 557-58.

[36]   *Id*. at 562.

[37]   *Id*. at 561.

[38]   *Id*. at 560.

to its rules.[39]

The Second Circuit affirmed.[40]  It concluded that "[t]he district court disposed of each of [Altman's jurisdictional] arguments, holding that [the statutory scheme] does, under this Circuit's precedent, supply the jurisdictional route that Altman must follow to challenge the SEC action in this case."[41]

Shortly after the district court ruled in *Altman* (but before the Second Circuit's affirmance), another court in this district reached a different conclusion in *Gupta v. SEC*,[42] which was related to the criminal insider trading prosecution of Raj Rajaratnam and others.  The SEC brought actions in the district court against approximately twenty-eight persons and entities associated with Rajaratnam, but then brought an administrative proceeding against Gupta.[43]  Gupta asked the district court to enjoin the proceeding.  He argued that the "SEC's unjustified decision to deprive [him], alone, of the opportunity to contest these allegations in federal court single[d] him out for uniquely unfavorable treatment" in violation of his equal protection rights.[44]

Applying *Thunder Basin*, the district court held that it had jurisdiction to hear Gupta's equal protection claim.  First, it concluded that forcing Gupta to adjudicate his constitutional claims

---

[39]

    *Id.*

[40]

    *Altman v. SEC*, 687 F.3d 44 (2d Cir. 2012) (per curiam).

[41]

    *Id*. at 46.

[42]

    796 F. Supp. 2d 503 (S.D.N.Y. 2011).

[43]

    *Id*. at 506.

[44]

    *Id*. at 506-07.

before the SEC would foreclose judicial review because the SEC's discovery rules would make it impossible to develop an adequate record to support those claims.[45]   Second, it determined that the request for an injunction was "wholly collateral" to the underlying adjudication because Gupta's equal protection claim would be viable "even if Gupta were entirely guilty of the charges" brought by the SEC.[46]   Third, the court concluded that the equal protection claim was "not peculiarly within the SEC's competence or expertise," especially as the SEC would have to decide "whether it itself engaged in unequal protection in bringing its charges."[47]   While *Gupta* recognized that allowing parties to make an end-run around normal appellate review of administrative actions might invite frivolous claims, it suggested that the plausibility filter of *Ashcroft v. Iqbal*[48] would provide the district courts with a mechanism to sift out nuisance suits.[49]

Two of my colleagues took a different tack in *CleanTech Innovations, Inc. v. NASDAQ Stock Market, LLC*.[50]   In that case, a Chinese company alleged that NASDAQ had delisted it for discriminatory reasons in violation of certain provisions of the Securities Exchange Act of

---

[45]
     *Id*. at 513-14.

[46]
     *Id*. at 513.

[47]
     *Id.* at 512.

[48]
     556 U.S. 662 (2009).

[49]
     796 F. Supp. 2d at 514.

[50]
     The case was initially before Judge Sullivan and concluded before Judge Forrest.  *See* No. 11 Civ. 9358 (RJS), 2011 WL 7138696 (S.D.N.Y. Dec. 30, 2011); No. 11 Civ. 9358 (KBF), 2012 WL 345902 (S.D.N.Y. Jan. 31, 2012).

1934.[51]   The New York County Supreme Court issued a temporary restraining order enjoining NASDAQ from delisting plaintiff's stock, at which point NASDAQ removed the case to federal district court and moved to vacate the TRO.[52]   The district court, concluding that there was "no reason to depart from the procedures" that typically govern appellate review of agency orders, granted the motion to vacate.[53]   It distinguished *Free Enterprise Fund* on the ground that the constitutional challenge at issue in that case was vastly different from delisting disputes, which "are expressly the province of the SEC."[54]   The plaintiff then filed an amended complaint that included an equal protection claim based on NASDAQ's alleged discrimination.[55]   At that point, the court dismissed the complaint for lack of subject matter jurisdiction.[56]   It concluded that the equal protection claim was not "wholly collateral" to the delisting action and that the plaintiff could seek meaningful review through the normal statutory channels.[57]

The most recent case is *Arjent LLC v. SEC*.[58]   Arjent there sought an injunction to halt an ongoing SEC investigation.   It alleged that the investigation constituted harassment and violated

---

[51]
    2011 WL 7138696 , at *1.

[52]
    *Id*.

[53]
    *Id*. at *3.

[54]
    *Id*. at *3 n.2.

[55]
    2012 WL 345902, at *1.

[56]
    *Id*. at *2-3.

[57]
    *Id*. at *1-2.

[58]
    7 F. Supp. 3d 378 (S.D.N.Y. 2014).

its equal protection rights because, as a small broker/dealer, it was "subjected to harsher treatment compared to large firms."[59]   The court, without mentioning *Altman* or *CleanTech*, followed the reasoning of *Gupta*.  It held that it had subject matter jurisdiction over the equal protection claim, but dismissed the claim under *Iqbal* because the complaint did not plead sufficient facts "to plausibly allege disparate treatment between small firms and large firms during SEC investigations."[60]

Plaintiffs and the SEC urge the Court to draw sweeping – and opposite – conclusions from these cases.  Harding and Chau contend that the logic of *Gupta* and *Arjent* is dispositive.[61]   The SEC, by contrast, argues that *Altman* impliedly rejected *Gupta* and that the Second Circuit has counseled against interpreting *Thunder Basin* too broadly.[62]   The Court declines to accept either position.

*Altman*, *Gupta*, *CleanTech*, and *Arjent* resist easy distillation into a black and white rule – and for good reason.  *Thunder Basin* and *Free Enterprise Fund* teach that the question of whether a special statutory scheme provides for adequate review of administrative actions involves case-specific determinations.   Whether jurisdiction exists in a particular instance depends in significant part on the nature of the constitutional claim at issue – whether it is "wholly collateral

---

[59]   *Id.* at 380.

[60]   *Id.* at 385.

[61]   *See* Plaintiffs' Mem. of Law in Further Support of Motion for Preliminary Injunction and in Opposition to the SEC's Motion To Dismiss [DI 20] at 23.

[62]   The Second Circuit's *Altman* decision did not mention *Gupta* at all, and the Court finds the SEC's argument that *Altman* in substance disapproved *Gupta* unconvincing.

to a statute's review provisions" – and on a party's ability to litigate that claim in an administrative proceeding and obtain adequate judicial review if it loses – whether "preclusion could foreclose all meaningful judicial review."[63]

Even so, this quartet of recent cases yields one clear concluson.  At least some SEC respondents seem to believe that they can procure a one-way ticket out of an agency proceeding and into district court simply by raising a constitutional allegation.  *Thunder Basin*, *Free Enterprise Fund*, and good sense say otherwise.  This Court's jurisdiction is not an escape hatch for litigants to delay or derail an administrative action when statutory channels of review are entirely adequate.

For reasons that will appear, the Court concludes that permitting plaintiffs to seek pre-enforcement relief from the SEC in this case would be "inimical to the structure and purposes" of the statutory review scheme governing SEC adjudications and would not provide an otherwise unavailable means of effective judicial review.[64]  The Court therefore lacks subject matter jurisdiction and the complaint must be dismissed.

IV.    *Plaintiffs' Due Process Claim*

In order to determine whether there is jurisdiction over plaintiffs' due process claims, it is important to specify the claims with precision.  There is an important distinction between a claim that an administrative scheme is unconstitutional in all instances – a facial challenge – and a claim that it violates a particular plaintiff's rights in light of the facts of a specific case – an as-applied challenge.  As between the two, courts are more likely to sustain pre-enforcement

---

[63]
       *Thunder Basin*, 510 U.S. at 212-13 (internal quotation marks omitted).

[64]
       *Id.* at 216.

jurisdiction over "broad facial and systematic challenges," such as the claim at issue in *Free Enterprise Fund*.[65]  This tendency is not a hard-and-fast rule, as "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge."[66]  Rather, it is a recognition that the *Thunder Basin* and *Free Enterprise* factors militate against jurisdiction when a pre-enforcement constitutional claim relates to factual issues that are the subject of a pending administrative adjudication.  Tracing the history of this case, it is clear that plaintiffs' due process claims are an "as-applied" challenge that depends on the circumstances of plaintiffs' particular case.  This fact makes it difficult for plaintiffs to sustain their burden of proving that this Court has subject matter jurisdiction.

Our analysis begins with SEC Rule of Practice 360, which is the principal source of plaintiffs' alleged due process injuries.  It states that, "[i]n the Commission's discretion, after consideration of the nature, complexity, and urgency of the subject matter, and with due regard for the public interest and the protection of investors, [the time period in which the hearing officer's initial decision must be filed] will be either 120, 210 or 300 days from the date of service" of an order instituting proceedings.[67]  When the SEC initiated proceedings against plaintiffs in October 2013, it adopted a 300-day deadline.[68]  The ALJ thereafter scheduled the administrative hearing to

---

[65]

> *Elk Run Coal Co., Inc. v. Dep't of Labor*, 804 F. Supp. 2d 8, 21 (D.D.C. 2011) (describing *Free Enterprise Fund* as such a challenge).

[66]

> *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2135 (2012) (internal quotation marks omitted).

[67]

> 17 C.F.R. § 201.360(a)(2).

[68]

> DI 24 Ex. 1 at 14.

begin on March 31, 2014.[69]

Plaintiffs initially raised their due process concerns in a December 2013 motion before the ALJ.[70]   They claimed that the SEC had "dump[ed] its massive file" – allegedly 22 million documents – on plaintiffs' counsel and that, as a result, "the first two months of Respondents' trial preparation ha[d] been spent *processing* electronic data."[71]   Plaintiffs pointed to SEC Rule of Practice 161, which allows for the postponement of any hearing "for good cause shown."[72]   They argued that due process required a six-month adjournment in view of the voluminous record in this case.[73]

Chau and Harding made three additional requests.   First, they argued that due process required a mechanism that would "significantly narrow the issues in the case."[74]   They claimed that SEC Rule of Practice 250, which allows for summary disposition, "is in the nature of a motion for summary judgment" and would not be available "until meaningful fact discovery is completed."[75]   Instead, plaintiffs argued that the SEC should be subject both to the particularized pleading requirement of Federal Rule 9(b) and to a motion to dismiss under Federal Rule 12(b)(6).   Second,

---

[69]   DI 24 Ex. 6 at 2.

[70]   DI 24 Ex. 7.

[71]   *Id.* at 2 (emphasis in original).

[72]   17 C.F.R. § 201.161(a).

[73]   DI 24 Ex. 7 at 7-8.

[74]   *Id*. at 10.

[75]   *Id*.

plaintiffs contended that application of the discovery provisions of the Federal Rules was necessary to help them "locate and review relevant documents in time for trial."[76]  Third, plaintiffs argued that SEC Rule 230, governing the production of documents, was defective because it allegedly permitted the SEC to produce documents in an unorganized and unsearchable fashion.  Plaintiffs demanded "tags, labels, file folders, and/or other means of organizing relevant documents," which they claimed would have been required under Federal Rule 34 in a civil case in a district court.[77]  Harding and Chau insisted that these accommodations were "the minimum required to enable this matter to proceed in accordance with due process."[78]

The ALJ denied the motion on January 24, 2014.[79]  The ALJ's ruling did not turn on a mechanistic application of SEC rules, but rather on an analysis of the facts at hand:

> "I am sympathetic to Respondents' situation, and there may one day be an administrative proceeding where the difficulties of preparing for hearing within the time specified by Rule 360(a) are found to warrant some of the extraordinary relief Respondents request.  *But this is not that proceeding.*  Given the manner in which the Division has produced the investigative files, including files from other investigations, and given the representations the Division has made regarding them, Respondents should be able to meaningfully prioritize their review."[80]

The ALJ made also the reasonable point that, for all of plaintiffs' *sturm und drang* over the SEC's 22 million-document production, "if it is true that the investigative file is larger than the entire

---

[76]
    *Id*. at 10-11 (discussing Federal Rules 26, 30, 31, 33, and 36).

[77]
    *Id*. at 12.

[78]
    *Id*. at 15.

[79]
    DI 24 Ex. 11.

[80]
    *Id*. at 2 (emphasis added).

printed Library of Congress, as Respondents assert, it stands to reason that the Division did not actually review every page in all the investigative files it produced" and "[t]his fact alone should permit Respondents to focus their review efforts on a small subset of the investigative files."[81]

On February 14, 2014 plaintiffs reasserted their due process claims and raised also a separate equal protection claim in an emergency motion before the ALJ.[82]  The ALJ denied the motion on February 19, 2014.[83]  Plaintiffs then filed a petition for interlocutory review before the SEC,[84] which the SEC denied on March 14, 2014.[85]  As to plaintiffs' due process argument, the SEC stated that "it appears from the record here that respondents are being afforded a meaningful opportunity to be heard."[86]

What these facts show is that, at every moment between December 2013 and March 2014, Harding and Chau's due process claim has been that the SEC's procedural rules, including

---

[81]

*Id*.

[82]

DI 24 Ex. 33.  The February 14 motion raised also, for the first time but in a footnote, the argument that the SEC's rules violated plaintiffs' right to a jury trial under the Seventh Amendment.  *See id*. at 8 n.3.  The complaint filed in this Court appears to tie this claim to plaintiffs' equal protection arguments.  *See* DI 2 ¶ 2 (stating that "every other party who has been sued by the Commission in a case like this" has had the "the right to a jury trial, the use of the discovery procedures available in federal court to shape their defense, the ability to challenge claims before trial that fail to satisfy rational pleading standards and the protections of the Federal Rules of Evidence to bar unreliable evidence.").

[83]

DI 24 Ex. 34 at 2.

[84]

DI 24 Ex. 35.

[85]

DI 24 Ex. 38.

[86]

*Id.* at 13.

its 300-day deadline, are unfair in light of "the facts and circumstances of [their] case."[87]  There has been no suggestion that the SEC's rules are unconstitutional in every instance.

Now that the SEC hearing has concluded, a due process claim that had been forward-looking – i.e., that it *would be* unfair to force plaintiffs to adjudicate their case administratively without more time to prepare – has shifted from the subjunctive to the indicative mood.  Plaintiffs now can point to occurrences in the administrative record that, they claim, evidence due process violations.  They devote seventeen pages of their brief to a detailed account of how the SEC's rules allegedly "made it impossible for Plaintiffs' counsel to conduct adequate document review and other fact development," how plaintiffs allegedly "were unable to meet, let alone depose, most of the witnesses with relevant information prior to the hearing," and how plaintiffs allegedly "were unable to engage experts timely and were unable to take full advantage of the capabilities of the experts they did hire."[88]  They level several additional accusations, including that the SEC changed its theory of the case at the "eleventh hour,"[89] that the SEC offered "false testimony,"[90] and that the SEC's expert was deliberately "misleading"[91] on the stand.  The recriminations asserted in this Court support, in plaintiffs' view, the argument that the SEC's rules prevented them from preparing an adequate defense.

---

[87]

DI 2 ¶ 6.

[88]

DI 20 at 3.

[89]

*Id.* at 4.

[90]

*Id.* at 11.

[91]

*Id.* at 16.

The SEC argues that plaintiffs' briefing "forcefully demonstrates why this court lacks jurisdiction: all [of plaintiffs'] complaints are inextricably intertwined with [the] ongoing administrative proceeding and can be reviewed by a court of appeals, if necessary, when the Commission enters a final order."[92]  The SEC is correct.  Plaintiffs' claim of procedural unfairness fails to satisfy the three criteria of *Thunder Basin*.

*First*, SEC adjudication would not "foreclose all meaningful judicial review" of plaintiffs' due process claim.[93]  On the contrary, plaintiffs already have compiled quite the record of allegedly problematic occurrences resulting from being forced to adjudicate their case on the SEC's timetable.  Should plaintiffs ultimately lose before the Commission, our circuit is as capable of reviewing this record and reaching conclusions as is this Court.  Moreover, the entire question would be moot were they to prevail before the SEC.[94]

*Second*, plaintiffs' due process arguments are not "wholly collateral" to the SEC proceeding.[95]  If anything, plaintiffs' claims are *central* to its day-to-day conduct.  *Jarkesy v. SEC*[96] is illustrative.  In that case, plaintiffs sued to enjoin an SEC administrative proceeding, alleging that the SEC's acceptance of offers of settlement from other respondents in the same litigation had led

---

[92]   SEC's Reply in Support of Its Motion to Dismiss [DI 22] at 2.

[93]   *Thunder Basin*, 510 U.S. at 212-13.

[94]   *Cf. LaVallee Northside Civic Ass'n v. V.I. Coastal Zone Mgmt. Comm'n*, 866 F.2d 616, 620 (3d Cir. 1989) ("[P]erhaps the most compelling reason for favoring administrative exhaustion is the strong possibility that the dispute may become moot if the party ultimately prevails before the agency, thus obviating the occasion for judicial review.").

[95]   *Thunder Basin*, 510 U.S. at 212.

[96]   No. 14 Civ. 114 (BAH), 2014 WL 2584403 (D.D.C. June 10, 2014).

it to "prejudge the case" in violation of plaintiffs' due process rights.[97]  The court held that it lacked

jurisdiction.  It determined that plaintiffs' claim was not "wholly collateral" to the SEC proceeding,

as plaintiffs would "either have the opportunity to seek judicial review if they [were] aggrieved by

the SEC's final order or, if they [were] not aggrieved, their fact-specific challenges [would] be

moot."[98]  In any event, "the plaintiffs would have 'a meaningful avenue of relief.'"[99]

   The same logic applies here.  Chau and Harding *themselves* characterize their due

process claim as depending on "the application of the Commission's [administrative proceeding]

rules to the facts and circumstances of this case."[100]  Such an "as-applied" challenge is not, in this

context, "wholly collateral" to the SEC hearing within the meaning of *Thunder Basin* and *Free*

*Enterprise Fund*.

   Indeed, on this question of what claims are "collateral" to an adjudication, one

passage in plaintiffs' brief is especially telling.  Harding and Chau claim that they have been "forced

to expend enormous resources responding to a litany of unfair surprises" and assert that, "[u]nlike

large corporate defendants, [they] do not have unlimited resources . . . to continue to litigate" this

case.[101]

   This bid to evoke sympathy highlights the remarkably problematic nature of

---

[97]

  *Id*. at *2.

[98]

  *Id*.

[99]

  *Id*. (quoting *Free Enter. Fund*, 561 U.S. at 491).

[100]

  DI 2 ¶ 6.

[101]

  DI 20 at 4.

plaintiffs' due process arguments.  Criminal defendants face trial every day in this and other courthouses – often with poorly paid, court-appointed counsel because they cannot afford any private representation, let alone the same representation as "large corporate defendants."  Those defendants, many of whom face peril far greater than the administrative penalties facing plaintiffs, cannot interrupt their prosecutions and trials to appeal an allegedly inadequate amount of time to prepare[102] or an adverse discovery ruling.[103]  In almost every instance, they must await conviction and final judgment.[104]  Delaying judicial review does not violate these criminal defendants' due process rights any more than requiring plaintiffs to await final adjudication before the SEC would violate theirs.

> *Third*, plaintiffs fail to articulate any convincing reason why the SEC lacks the competence to consider the fairness of proceedings before its ALJs.  This is not a situation, as in *Free Enterprise Fund*, where a litigant is asking an agency to conclude that the very existence of one

---

[102]

> *See Stans v. Gagliardi*, 485 F.2d 1290, 1292 (2d Cir. 1973) ("So far as defendants are concerned, our jurisdiction by way of appeal in criminal cases is limited to final judgments. Not even the most liberal interpretation of the principle imparting finality to certain collateral intermediate orders would go so far as to include an order setting a trial date, no matter how serious the consequences for a defendant are alleged to be." (internal citations and quotation marks omitted)).

[103]

> *See United States v. Zimmelman*, 634 F.2d 1237, 1237 n.1 (9th Cir. 1980) ("We have no jurisdiction to consider the denial of discovery until after a final judgment."); *United States v. Sorren*, 605 F.2d 1211, 1215 (1st Cir. 1979) ("Denials of requests for discovery may generally be appealed only after final judgment.") (citing *Browning Debenture Holders' Comm. v. DASA Corp.*, 524 F.2d 811, 817 (2d Cir. 1975)).

[104]

> *See SEC v. Rajaratnam*, 622 F.3d 159, 167 (2d Cir. 2010) (the "small set of interlocutory orders that are deemed 'final' includes only decisions (1) that are conclusive, (2) that resolve important questions separate from the merits, and (3) that are effectively unreviewable on appeal from the final judgment in the underlying action." (internal punctuation omitted) (citing *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 105 (2009)).

of its constituent parts is unconstitutional.  Rather, plaintiffs' challenge is to the fairness of their particular hearing.[105]  The SEC is well equipped to evaluate claims of unfairness in proceedings before its ALJs – and if it fails to do so, the courts of appeals stand ready to correct the error.

Harding and Chau insist that they should not have to wait.  They believe that the unfairness in their proceeding is manifest *now*.  Perhaps.  Perhaps not.  Indeed, if plaintiffs' arguments are as strong as they insist, then vindication will be theirs should the time come.  But plaintiffs offer no compelling reason why the congressionally-specified route of review is inappropriate here, and the Court sees none.

The SEC's appellate review scheme is entirely adequate for addressing plaintiffs' due process arguments.  The Court thus lacks jurisdiction over plaintiffs' due process claim.

## V.    *Plaintiffs' Equal Protection Claim*

The Court turns next to plaintiffs' equal protection claim.

Plaintiffs identify three other SEC cases involving CDOs[106] and contend that those cases "are nearly identical in terms of scope, complexity, types of instruments, amounts of money at issue, categories of witnesses, length of investigation, violations alleged, legal theories involved,

---

[105]

        *Cf. Altman*, 768 F. Supp. 2d at 561 ("Forcing Altman to invoke the SEC's disciplinary provisions is far from arbitrary – indeed those provisions go to the heart of Altman's case.").

[106]

        The three cases are *SEC v. Stoker*, No. 11 Civ. 7388 (S.D.N.Y.) (leading to a jury verdict of not liable); *SEC v. Steffelin*, No. 11 Civ. 4204 (in which the SEC dismissed remaining charges after Judge Cedarbaum partially granted a motion to dismiss); and *SEC v. Goldman Sachs & Co. & Fabrice Tourre*, No. 10 Civ. 3229 (S.D.N.Y.) (leading to a jury verdict of liable).

and penalties sought,"[107] but were brought in federal courts instead of SEC administrative proceedings. They contend that the SEC has chosen to adjudicate their case administratively "because it lost" two of the prior cases and advanced "a theory of liability" in the third that "contradicts the position it now seeks to advance" against them.[108] They allege that the SEC has treated them differently than "every other party who has been sued by the Commission" in a CDO-related case.[109]

Notably, plaintiffs do not allege that they are members of a protected class. Instead, theirs is a so-called "class of one" claim. They assert only that they have been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."[110] The issue is whether, under *Thunder Basin* and *Free Enterprise Fund*, the Court has jurisdiction over plaintiffs' "class of one" claim. The Court concludes that it does not.

In reaching this determination, the Court has considered carefully the reasoning of *Gupta*.[111] Gupta, like Harding and Chau, brought an equal protection claim on the theory that it was constitutionally improper for the SEC to pursue charges against him administratively while bringing similar cases in Article III courts. Harding and Chau contend that *Gupta* demonstrates that "the

---

[107]

DI 2 ¶ 30.

[108]

*Id.* ¶ 35.

[109]

*Id.* ¶ 2.

[110]

*Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603 (2008) (restricting "class of one" claims in the public employment context, in part based on the "discretion that [public employers] are entrusted to exercise").

[111]

796 F. Supp. 2d 503.

SEC's 'administrative machinery' does not provide a reasonable mechanism for pursuing an equal protection claim."[112]  The Court disagrees.

As an initial matter, *Gupta* is distinguishable.  That case involved an allegation of unequal treatment relative to twenty-eight comparator parties who allegedly participated in the same insider trading ring.[113]  Harding and Chau, by contrast, point to just three other cases, none of which involved the same underlying facts.  In addition, assuming for the sake of argument that *Gupta* was decided correctly, this Court does not find *Gupta*'s application of the *Thunder Basin* factors persuasive in these circumstances.

*First*, adjudication of plaintiffs' equal protection claim before the SEC will not "foreclose all meaningful judicial review."[114]  Plaintiffs argue that their claim "turns entirely on extrinsic evidence of whether the SEC's decision to treat Plaintiffs differently from the defendants in the other contested CDO cases was irrational, arbitrary, and discriminatory" and assert that such extrinsic evidence cannot be "explored" within the administrative proceeding.[115]  They cite *Gupta* for the proposition that the "SEC's Rules of Practice do not permit counterclaims against the SEC, nor do they allow the kind of discovery of SEC personnel that would be necessary to elicit admissible evidence corroborative of such a claim."[116]  While this may be true in some cases, it

---

[112]

DI 20 at 24.

[113]

796 F. Supp. 2d at 506.

[114]

*Thunder Basin*, 510 U.S. at 213-14.

[115]

DI 25 at 27.

[116]

796 F. Supp. 2d at 513-14 (internal citation omitted).

certainly has not been true here.  Harding and Chau have insisted throughout the SEC proceeding that the SEC brought the case against them for improper reasons.  To prove this claim, they sought access to the agency's internal "action memoranda" in this and the three other CDO-related cases[117] and asked the ALJ to authorize depositions of SEC staffers[118] – including the lawyers opposing them in the SEC adjudication[119] – in order to question them about why the Commission brought this case in an administrative forum.  The ALJ concluded that the information sought via deposition was privileged[120] and, upon reviewing the action memorandum in this case *in camera*,[121] concluded that its contents were privileged as well.[122]  Thus, the plaintiffs' failure to obtain what they sought was not a product of the SEC Rules of Practice.  It was the consequence of a privilege ruling that might well have been reached by a district court.[123]

---

[117]
> *See* DI 16 Ex. C at 3207:1-3208:21 (Tr. of SEC Hr'g (Apr. 21, 2014)); *id.* at 4445:20-23, 4446:11-16 (Tr. of SEC Hr'g (Apr. 25, 2014)).

[118]
> *Id.* at 3193:14-3195:25 (Tr. of SEC Hr'g (Apr. 21, 2014)).

[119]
> *Id.* at 3201:15-19.

[120]
> *Id.* at 3213:2-3215:21.

[121]
> The ALJ declined to examine the action memoranda in the three other cases.  *Id.* at 4457:11-21 (Tr. of SEC Hr'g (Apr. 25, 2014)).  Portions of the memorandum for this case that the ALJ reviewed first were redacted to remove staff legal analysis that was not relevant to the SEC's choice of forum.  *Id.* at 4459:20-25, 4461:5-13, 4464:24-4466:2.

[122]
> *Id.* at 4691 (Tr. of SEC Hr'g (Apr. 30, 2014)).

[123]
> *See, e.g.*, *SEC v. Nacchio*, No. 05 Civ. 480 (MS), 2007 WL 219966, at *7 (D. Colo. Jan. 25, 2007) (determining that certain SEC documents were privileged after *in camera* review of an SEC action memorandum); *SEC v. Cavanagh*, No. 98 Civ. 1818 (DLC), 1998 WL 132842, *2 (S.D.N.Y. Mar. 23, 1998) (holding that SEC materials were privileged where the documents at issue were prepared by SEC attorneys who were in the process of determining whether to recommend the bringing of an enforcement action).

In short, plaintiffs have been litigating their equal protection claim actively.  While they no doubt disagree with the ALJ's privilege determinations, they can appeal those decisions to the full Commission.  If they lose there, and if a court of appeals later finds those decisions problematic, it can order whatever relief it deems proper, including directing the SEC's staff to produce the contested discovery and the ALJ to take additional evidence.[124]  Hence, this is not a case in which the SEC's procedures have condemned plaintiffs' equal protection claim to failure.  That claim will be ripe for appellate examination in due course in the event that Chau and Harding lose in the administrative arena.

The Court recognizes that *Gupta* stated that obtaining "meaningful judicial review" of an equal protection claim before the SEC would be difficult because the Commission "would be inherently conflicted in assessing such a claim, and, at a minimum, Gupta would be forced to endure the very proceeding he alleges is the device by which unequal treatment is being visited upon him."[125]  This Court is unpersuaded.  The claim that the SEC is "inherently conflicted" might have some force if adjudication before the SEC were the end of the line for plaintiffs, but of course it is not.  Plaintiffs can seek review of a final SEC order before a federal court of appeals and, if need be, an order to take additional evidence.

---

[124]

> *See* 15 U.S.C. §§ 77i(a) ("If either party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the hearing before the Commission, the court may order such additional evidence to be taken before the Commission . . . ."); *see also* 15 U.S.C. §§ 80b-13(a), 80a-42(a) (same).

[125]

> 796 F. Supp. 2d at 514.

*Touche Ross & Co. v. SEC*[126] is instructive.  There, the SEC instituted administrative proceedings against an accounting firm and three of the firm's former partners based on allegations that they had engaged in improper professional conduct by failing to audit certain clients' financial statements in accordance with generally accepted accounting standards.[127]  Before the hearing commenced, the SEC respondents asked a district court to bar the proceeding.  They argued that the SEC (i) lacked the statutory authority to institute the hearing, and (ii) was "biased" such that it could not provide a "fair and impartial hearing in accordance with due process."[128]  The Second Circuit rejected the bias argument outright, holding that "[u]ntil the Commission has acted and actual bias has been demonstrated, the orderly administrative procedures of the agency should not be interrupted by judicial intervention."[129]  The proper time to raise such an issue would be after "an adverse determination and an appeal has been taken raising these claims on the record as a whole."[130]  *Gupta*'s concern that the SEC would be "inherently conflicted" in adjudicating an equal protection challenge is difficult to square with *Touche Ross*'s rejection of a pre-enforcement allegation of SEC bias.  This Court agrees with the concurrence in *Touche Ross*: appellate review "is hardly a toothless animal; it is able to excise not only error but also bias, impropriety,

---

[126]

609 F.2d 570 (2d Cir. 1979).

[127]

*Id*. at 573.

[128]

*Id*. at 575.  In particular, the respondents took issue with the fact that the SEC sought to adjudicate the case against them in a public, rather than a private, hearing.  *Id*.

[129]

*Id*.

[130]

*Id*.

irrationality, and abuse of discretion."[131]

The Supreme Court's decision in *FTC v. Standard Oil Company of California*[132] reinforces this point.  Standard Oil there challenged in federal court the FTC's initiation of an administrative action against the company.  It alleged that the FTC had no reasonable basis for its suit and instead was acting in response to political pressure.[133]  The Supreme Court concluded that judicial review of the FTC's actions was not permissible under the Administrative Procedure Act until there was a final order.[134]  The Court recognized that the burden of litigation would be "substantial," but admonished that "the expense and annoyance of litigation is 'part of the social burden of living under government.'"[135]

To be sure, these principles are not necessarily absolute.  There may be cases in which courts will not require litigants to "bet the farm" in order to attempt to vindicate their claims.[136]  While *Free Enterprise Fund* reiterates that pre-enforcement challenges are appropriate

---

[131]
    *Id.* at 583 (Kaufman, J., concurring).

[132]
    449 U.S. 232 (1980).

[133]
    *Id*. at 235.

[134]
    *Id*. at 245-46.

[135]
    *Id*. at 244 (quoting  *Petroleum Exploration, Inc. v. Public Service Comm'n*, 304 U.S. 209, 222 (1938)).

[136]
    *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 134 (2007) (permitting a patent licensee to maintain a suit for declaratory judgment about the validity of a patent without first breaking the underlying licensing agreement).

when "testing the validity" of a particular law,[137] Harding and Chau "have made no . . . claim about [the validity of] any statute apart from how the statute is being applied to them in the instant enforcement action."[138]  In these circumstances, requiring plaintiffs to litigate their equal protection claim through the normal statutory channels would not deny them meaningful judicial review.

Second, plaintiffs' equal protection claim is not "wholly collateral" to the SEC proceeding.[139]  Plaintiffs argue that their claim satisfies this criterion because its viability is "completely separate" from their alleged culpability under the securities laws.[140]  The logical import of this assertion is that administrative respondents need not wait for actual adjudication of their cases in order to challenge their legality, so long as they impugn an agency's motives for bringing the action initially.  But Touche Ross and Standard Oil rejected precisely this argument.[141]  "Where, as here, the 'injury' inflicted on the party seeking review is the burden of going through an agency proceeding, [Standard Oil] teaches that the party must patiently await the denouement of proceedings within the Article II branch."[142]

Moreover, Harding and Chau's equal protection claim does relate to the outcome of

---

[137]

561 U.S. at 490.

[138]

Jarkesy, 2014 WL 2584403, at *5.

[139]

Thunder Basin, 510 U.S. at 212.

[140]

DI 25 at 28 (citing Gupta, 796 F. Supp. 2d at 513 ("The Complaint alleges that the SEC intentionally, irrationally, and illegally singled Gupta out for unequal treatment . . . .  These allegations, which, if adequately pleaded, must be taken as true for purposes of this motion, would state a claim even if Gupta were entirely guilty of the charges . . . .")).

[141]

See Touche Ross, 609 F.2d 570; Standard Oil, 449 U.S. 232.

[142]

USAA Fed. Sav. Bank v. McLaughlin, 849 F.2d 1505, 1510 (D.C. Cir. 1988).

the SEC action.  As the SEC has pointed out – correctly, in this Court's view – many of plaintiffs' claims about the differences between their case and other CDO-related cases "appear, at their core, to be more about the evidence and theories of liability."[143]   In this situation, plaintiffs' equal protection claim is not "wholly collateral" to the SEC proceeding, but of a piece with it.

Third, plaintiffs' equal protection claim is not "outside the [SEC's] expertise."[144]  To be sure, the judicial branch is the ultimate arbiter of constitutional law.[145]  Adjudication of such claims is "not peculiarly within the SEC's competence."[146]  But that does not mean that the SEC is powerless to consider constitutional issues that arise during agency hearings.  This very case proves the point.  When Harding and Chau initially raised their equal protection arguments, the ALJ ruled that a "class of one" claim is not available in the context of a statutorily authorized civil enforcement proceeding.[147]  When plaintiffs sought approval for an interlocutory appeal from the Commission, the SEC considered the merits of their equal protection argument as well.  The Commission stated that while the three CDO-related cases identified by plaintiffs "may share some similarities, there are notable differences" and concluded that "respondents' superficial comparisons to a few other

---

[143]

DI 24 Ex. 38 at 12.

[144]

Thunder Basin, 510 U.S. at 212.

[145]

See Cooper v. Aaron, 358 U.S. 1, 18 (1958) ("Marbury v. Madison . . . declared the basic principle that the federal judiciary is supreme in the exposition of the law of the Constitution, and that principle has ever since been respected by this Court and the Country as a permanent and indispensable feature of our constitutional system." (internal citations omitted)).

[146]

Gupta, 796 F. Supp. 2d at 512.

[147]

DI 24 Ex. 34 at 2 (citing United States v. Am. Elec. Power Serv. Corp., 258 F. Supp. 2d 804, 808 (S.D. Ohio 2003)).

proceedings fall short of establishing a colorable equal protection violation."[148]   These efforts indicate that the SEC is competent to consider plaintiffs' constitutional claims, at least in the first instance.[149]

Taken to its logical conclusion, Harding and Chau's approach to agency competence would upend all manner of administrative enforcement schemes.   Numerous provisions of administrative law empower the executive branch to choose among enforcement strategies.   The Clayton and Federal Trade Commission Acts, for example, empower the Justice Department and the FTC to challenge allegedly anticompetitive mergers and acquisitions, although the Justice Department acts through civil suits[150] and the FTC acts through administrative proceedings.[151]   It strains credulity to argue that the Justice Department and the FTC lack the institutional wherewithal to determine which cases should be pursued in which forum.   Yet plaintiffs' argument that the SEC

---

[148]

DI 24 Ex. 38 at 12 (citing *Vill. of Willowbrook*, 528 U.S. 562, and *Engquist*, 553 U.S. 591). This Court, like the SEC, has serious doubts about whether plaintiffs' "superficial comparisons" are sufficient to allege plausibly a "class of one" claim, particularly as to the SEC's discretionary choice of the forum in which to bring charges.  *See United States v. Moore*, 543 F.3d 891, 901 (7th Cir. 2008) ("[T]he discretion conferred on prosecutors in choosing whom and how to prosecute is flatly inconsistent with a presumption of uniform treatment . . . . [A] class-of-one equal protection challenge, at least where premised solely on arbitrariness/irrationality, is just as much a 'poor fit' in the prosecutorial discretion context as in the public employment context.").   In the absence of subject matter jurisdiction, however, the Court declines to reach the issue.  *Cf. Harty v. Simon Prop. Grp., L.P.*, 428 F. App'x 69, 72 (2d Cir. 2011) (finding that, where district court dismissed claim for lack of jurisdiction, it had no power to adjudicate a motion to dismiss for failure to state a claim).

[149]

*Cf. CleanTech*, 2012 WL 345902, at *2 (noting that "CleanTech has raised its constitutional allegations before the SEC" and that the "Commission also appears to believe that it has authority and expertise to address plaintiff's constitutional claims.").

[150]

15 U.S.C. § 25.

[151]

*Id.* § 21.

lacks the "competence or expertise" to consider whether it was proper to bring its case administratively suggests that such decisions are constitutionally suspect – or at least doubtful enough to derail an administrative proceeding at its inception.[152]  The Court disagrees.

If anything, the SEC is *especially* competent when it comes to determining which CDO-related cases are appropriately brought in a district court and which in an administrative proceeding.  The Supreme Court's decision in *Moog Industries v. FTC* is instructive.[153]  That case involved a circuit split over whether the FTC had the power to issue "a valid cease and desist order . . . against a single firm until similar orders have been entered against that firm's competitors."[154]  The Supreme Court held that "the decision as to whether or not an order against one firm to cease and desist from engaging in illegal price discrimination should go into effect before others are similarly prohibited depends on a variety of factors peculiarly within the expert understanding of the Commission."[155]  The Court reasoned that it was "clearly within the special competence of the Commission to appraise the adverse effect on competition that might result from postponing a particular order," and stated that the "Commission alone is empowered to develop that enforcement policy best calculated to achieve the ends contemplated by Congress and to allocate its available funds and personnel in such a way as to execute its policy efficiently and

---

[152]     DI 25 at 28.

[153]     355 U.S. 411 (1958).

[154]     *Id*. at 411-12.

[155]     *Id*. at 413.

economically."[156]  The same rationale applies here.  Congress has provided the SEC with two tracks on which it may litigate certain cases.  Which of those paths to choose is a matter of enforcement policy squarely within the SEC's province.

The Court concludes that the normal channels of statutory review are adequate for adjudication of plaintiffs' equal protection claim.  The Court therefore lacks subject matter jurisdiction over both plaintiffs' constitutional claims and must dismiss the case.

*Conclusion*

The Court recognizes that the growth of administrative adjudication, especially in preference to adjudication by Article III courts and perhaps particularly in the field of securities regulation, troubles some.

Part of the concern no doubt comes from persons charged with violations of the securities laws and their counsel.  In the time-honored and entirely appropriate way of so many litigants, they usually want a particular forum, and deride alternatives, for no reason more exalted than self-interest.  They seek the forum that they believe, rightly or wrongly, would be more likely to find in their favor.

Another source of concern is apprehension that allowing the SEC to pursue some cases in administrative proceedings rather than in Article III courts will increase the role of the Commission in interpreting the securities laws to the detriment or exclusion of the long standing interpretative role of the courts.  This apprehension rests on an underlying concern that the Supreme Court eventually might extend broad *Chevron* deference to SEC interpretations of the securities laws

---

[156]   *Id.*

articulated by the Commission in the determination of administrative proceedings.[157]

These concerns are legitimate, whether born of self-interest or of a personal assessment of whether the public interest would be served best by preserving the important interpretative role of Article III courts in construing the securities laws – a role courts have performed since 1933.  But they do not affect the result in this case.

This Court's role is a modest one.  It is merely to determine whether the Court has the power to reach the merits of plaintiffs' constitutional claims.  Applying *Thunder Basin* and *Free Enterprise Fund*, this Court holds that it does not.  If plaintiffs lose before the Commission, they will have a full opportunity to present their arguments in a court of appeals.  In reaching this conclusion, moreover, this Court has not considered any views concerning the proper or wise allocation of interpretive functions between the Commission and the courts.  Those are policy matters committed

---

[157]  *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984), holds that an administrative agency interpretation of a statute it administers is entitled in certain circumstances to substantial deference from the courts.

*Chevron* deference typically has not been afforded "where . . . the agency's interpretation is presented in the course of litigation and has not been 'articulated before in a rule or regulation.'"  *SEC v. Rosenthal,* 650 F.3d 156, 160 (2d Cir. 2011).  A footnote, however, in another roughly contemporaneous Second Circuit case – decided by a different panel and without discussion of *Rosenthal* or the previous Second Circuit case upon which *Rosenthal* relied – observed that an interpretation by the Commission that it characterized as "a formal adjudicatory decision" "'trump[ed]' our [*i.e.,* the Second Circuit's] prior interpretation" on the same point.  *VanCook v. SEC,* 653 F.3d 130, 140 n.8 (2d Cir. 2011).

In view of the apparent conflict between *Rosenthal* and *VanCook,* it is not at all clear that the Second Circuit definitively has taken the position that Commission interpretations in adjudicatory proceedings are entitled to *Chevron* deference.  That is especially so in view of the fact that the "formal adjudicatory decision" referred to in *VanCook* was not the product of an adversary litigation, but a consent order entered to settle an administrative case.  *VanCook,* 653 F.3d at 140 n.8 (citing *David A. Finnerty,* Exchange Act Rel. No. 59,998, 95 SEC Docket No. 2534, 2009 WL 1490212 (May 28, 2009)).  And regardless of what position the Second Circuit takes with respect to *Chevron* deference, the ultimate determiner of the issue will be the Supreme Court.

36

to the legislative and executive branches of government.

       Plaintiffs' motion for a preliminary injunction [DI 2] is denied.  The SEC's motion to dismiss the action [DI 16] is granted in all respects.  The Clerk shall enter judgment and close the case.

       SO ORDERED.

Dated:      December 11, 2014

                                    Lewis A. Kaplan
                              United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)